UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUSLIMS ON LONG ISLAND, INC., IMRAN MAKDA, and MOEEN QURESHI,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE TOWN OF OYSTER BAY, SCOTT BYRNE, in his official capacity, JAMES CASTELLANE, in his official capacity, CLIFFORD CHABINA, in his official capacity, ANTHONY DILEONARDO, in his official capacity, ANGELO STANCO, in his official capacity, and LOUIS WARNER, in his official capacity,<br><br>*Defendants*. | 2:25-cv-00428-SJB-JMW |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

          **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I. THE COURT HAS AUTHORITY TO ISSUE A PRELIMINARY INJUNCTION ............ 2

II. LOCAL LAW NUMBER 6 TREATS RELIGION ON LESS THAN EQUAL TERMS ..... 4

    A. Theaters are Appropriate Comparators to Houses of Worship ................................ 4

    B. Plaintiffs' Use of Prayer Rugs Changes Nothing ...................................................... 5

    C. Defendants Also Treat Places of Worship Worse Than Libraries and Museums ........ 6

III. LOCAL LAW NUMBER SIX VIOLATES THE FREE EXERCISE CLAUSE ................ 6

    A. Local Law Number 6 is Not a Neutral Law of General Applicability ......................... 6

    B. Local Law Number 6 Cannot Survive Strict Scrutiny ................................................ 7

IV. DEFENDANTS' DENIAL SUBSTANTIALLY BURDENED PLAINTIFFS' FREE EXERCISE .................................................................................................................... 8

V. DEFENDANTS' DENIAL VIOLATED RLUIPA'S NONDISCRIMINATION PROVISION AND THE FREE EXERCISE CLAUSE ...................................................... 9

VI. THE TOWN'S DENIAL VIOLATED ARTICLE 78 ...................................................... 10

VII. THE REMAINING FACTORS FAVOR PLAINTIFFS .................................................. 11

CONCLUSION ................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Agudath Isr. of Am. v. Cuomo*,
　983 F.3d 620 (2d Cir. 2020)..................................................................................6, 7, 8, 11

*Al Falah Ctr. v. Twp. of Bridgewater*,
　2013 WL 12322637 (D.N.J. Sept. 30, 2013) ......................................................................3, 9

*Capriola v. Wright*,
　900 N.Y.S.2d 754 (2d Dep't 2010)..........................................................................................10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
　508 U.S. 520 (1993)................................................................................................................9

*Congregational Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
　138 F. Supp. 3d 352 (S.D.N.Y. 2015)......................................................................................7

*Ernalex Constr. Realty Corp. v. Bellissimo*,
　681 N.Y.S.2d 298 (2d Dep't 1998)..........................................................................................11

*Field Day, LLC v. Cnty. of Suffolk*,
　463 F.3d 167 (2d Cir. 2006)....................................................................................................6

*Fulton v. City of Phila.*,
　593 U.S. 522 (2021)................................................................................................................7

*Hisp. Counselling Ctr., Inc. v. Inc. Vill. of Hempstead*,
　237 F. Supp. 2d 284 (E.D.N.Y. 2002) ....................................................................................3

*Islamic Soc'y of Basking Ridge v. Twp. of Bernards*,
　226 F. Supp. 3d 320 (D.N.J. 2016) ........................................................................................5

*J&R Espositio Builders, Inc. v. Coffman*,
　584 N.Y.S.2d 73 (2d Dep't 1992)............................................................................................11

*New Life Ministries v. Charter Twp. of Mt. Morris*,
　2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)........................................................................5

*River of Life Kingdom Ministries v. Vill. of Hazel Crest*,
　611 F.3d 367 (7th Cir. 2010) ..............................................................................................4, 5

*St. Thomas Malankara Orthodox Church, Inc., Long Island v. Bd. of Appeals,
　Town of Hempstead*,
　804 N.Y.S.2d 801 (2d Dep't 2005)..........................................................................................10

*Tandon v. Newsom*,
   593 U.S. 61 (2021) (per curiam) ............................................................................... *passim*

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ............................................................................................. 2

*Volokh v. James*,
   656 F. Supp. 3d 431 (S.D.N.Y. 2023) ........................................................................... 2

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) ......................................................................................... 2

## STATUTES & RULES

N.Y. Building Code § 303.4 ................................................................................................ 6

## OTHER AUTHORITIES

H.R. Rep. No. 106-219 ........................................................................................................ 1

## PRELIMINARY STATEMENT

The "ability to assemble for worship" has always been "[a]t the very core of religious liberty." H.R. Rep. No. 106-219 at 18. But prior to the passage of RLUIPA, land use authorities frequently relied on "mere pretexts (such as traffic, safety, or behavioral concerns) to mask the actual goal of prohibiting constitutionally protected religious activity." *Id.* at 20. Defendants' response seeks to turn the clock back to that era.

Faced with a record of discrimination and well-established precedent supporting relief, Defendants ask the Court to look away—not because the law supports them, but because they would prefer not to answer for their conduct. Their opposition is grounded in the hope that delay, confusion, and manufactured procedural hurdles can substitute for legal justification. But constitutional rights are not suspended when zoning officials disapprove of how a community worships, and the judiciary does not forfeit its power simply because the requested relief is consequential.

At bottom, Defendants' arguments reflect a deeper, troubling position: that government actors can change the rules midstream, ignore the consequences of their decisions, and then invoke the complexity they have created as a shield against judicial scrutiny. But courts have long recognized that when government action infringes on core constitutional freedoms—like the right to religious exercise—delay is not neutral. It is harm. And when that harm is ongoing and irreparable, courts can provide preliminary relief.

This case is not a mere dispute over parking. It is about a broader pattern of exclusion masquerading as process. The Town has, step by step, made it harder for MOLI to serve its congregation. That is not a neutral application of land use law. It is precisely the kind of subtle yet unlawful discrimination RLUIPA and the First Amendment guard against.

1

# ARGUMENT

## I. THE COURT HAS AUTHORITY TO ISSUE A PRELIMINARY INJUNCTION

Defendants lead with the purported impropriety of issuing a preliminary injunction requiring Defendants to approve MOLI's application. But they do not cite any authority—and there is none—prohibiting this Court from issuing the requested injunction. *See* Response at 4–8. Rather, the case law provides that where a preliminary injunction "will provide the movant with substantially all the relief that is sought," the plaintiff must make a "substantial, or clear showing of[] likelihood of success to obtain preliminary relief." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34–35 (2d Cir. 1995) (quotations omitted). Defendants imply this burden is insurmountable. Not so. The Second Circuit has affirmed preliminary injunctions affording plaintiffs substantially all the relief sought, including, as here, in First Amendment cases of public interest. *See, e.g.*, *Yang v. Kosinski*, 960 F.3d 119, 123–24, 27–28 (2d Cir. 2020) (affirming issuance of preliminary injunction affording all the relief sought—directing the New York State Board of Elections to add presidential candidates back to the Democratic Party's primary ballot); *see also Volokh v. James*, 656 F. Supp. 3d 431, 436, 439 (S.D.N.Y. 2023) (granting preliminary injunction affording all the relief sought—prohibiting New York from enforcing law concerning hate speech on social media).

Defendants next contend that in the First Amendment context, courts "generally issue preliminary injunctions" only where harms can be "remedied imminently." Response at 5–7. Per Defendants, this "general[]" approach militates against an injunction here, because even if Plaintiffs' application was granted, it would be "over a year" before their new mosque was ready. *Id.* at 7. Tellingly, Defendants do not cite a single authority supporting this audacious proposition. Indeed, this argument would prevent congregations seeking building permits from obtaining preliminary injunctions because defendants can choose to slow-walk the land use process. Nothing

2

in Defendants' cases (examples of courts *granting* injunctions) requires giving municipalities this veto over the judiciary's equitable powers. In fact, courts have issued preliminary injunctions providing the exact forms of relief sought here. *See Hisp. Counselling Ctr., Inc. v. Inc. Vill. of Hempstead*, 237 F. Supp. 2d 284, 293–94 (E.D.N.Y. 2002) ("[D]efendants must provide [plaintiff] with a building permit and certificate of occupancy permitting [plaintiff] to establish a clinic and substance abuse treatment center[.]"); *Al Falah Ctr. v. Twp. of Bridgewater*, 2013 WL 12322637, at *3, *22 (D.N.J. Sept. 30, 2013) (granting preliminary injunction "directing the Planning Board to consider Plaintiff's application … under the legal framework that existed at the time of its application and without consideration of [the challenged ordinance]").

Finally, Defendants suggest that an injunction is inappropriate here because Plaintiffs' harm is "remote" rather than "actual and imminent." Response at 6 (emphasis omitted). But Plaintiffs explained in their opening brief that they are suffering ongoing harm *now* caused by their inadequate prayer facilities. Docket Entry ("DE") 3 at 28. For example, MOLI must turn away scores of young Muslims who want to enroll in evening classes to learn about their faith because it does not have enough room to educate them. Defendants do not contest that Plaintiffs' lack of space is preventing them from providing a religious education to congregants who want it. Nor do they challenge Plaintiffs' other irreparable harms, including their lack of adequate space for religious meals, wudu, and confidential conversations with clergy. These are classic irreparable harms. *See Tandon v. Newsom*, 593 U.S. 61, 64 (2021) (per curiam) (holding the loss of free exercise rights for even minimal periods of time is an irreparable harm).

In short, Plaintiffs' requested injunction is not prohibited, particularly unusual, or too slow a remedy to address Plaintiffs' ongoing irreparable harms. Defendants should therefore be required to defend their conduct on the merits. As set forth below, they cannot.

3

## II. LOCAL LAW NUMBER 6 TREATS RELIGION ON LESS THAN EQUAL TERMS

### A. Theaters are Appropriate Comparators to Houses of Worship

Prior to the passage of Local Law Number 6, MOLI's proposed mosque was required to supply 86 parking spots. DE 4-2 at 2 (pre-amendment parking calculation from the Town to MOLI). MOLI's application satisfied this by providing 88 parking spots. DE 4-20 at 2. Then, while Plaintiffs' application was pending, Defendants moved the goalposts to require 155 parking spots—an 80% increase. *See id.* This massive increase resulted exclusively from the application of Local Law Number 6, which required houses of worship to provide one parking spot for ever three *occupants*, rather than for every three *seats*, the formula still applicable to theaters. *See* DE 5-4 at 3.

Defendants respond that theaters are not appropriate comparators to houses of worship. Response at 10–15. But the problem for Defendants is that *they* have already recognized theaters as appropriate comparators for places of worship with regards to parking. It was the *Town's* policy prior to June 2022 to require the same amount of parking from theaters and places of worship. Defendants cannot credibly dismiss their own longstanding policy as baseless.

Defendants also fail to distinguish the considerable judicial authority treating theaters as appropriate comparators to houses of worship. The Seventh Circuit's ruling in *River of Life Kingdom Ministries v. Village of Hazel Crest* is representative. There, Judge Posner discussed whether a movie theater would be a good comparator for a church with regards to a municipality seeking to maintain "regular (as opposed to sporadic and concentrated) vehicular traffic." 611 F.3d 367, 373 (7th Cir. 2010) (Posner, J.). Judge Posner explained: "[f]rom that standpoint, a church is more like a movie theater, which also generates groups of people coming and going at the same time, than like a public library, which generates a smoother flow of traffic throughout the day." *Id.* Thus, he continued, RLUIPA's "equal-terms provision would … require the zoning

4

authorities" to treat churches like movie theaters for purposes of regulating traffic. *Id. River of Life* thus teaches that where—as here—a municipality wants to regulate the flow of traffic into and out of places of worship, theaters are apt comparators. *Accord New Life Ministries v. Charter Twp. of Mt. Morris*, 2006 WL 2583254, at *5 (E.D. Mich. Sept. 7, 2006) (holding libraries are similar to places of worship under RLUIPA's equal terms provision as their "groups … gather and meet with similar frequency").

### B. Plaintiffs' Use of Prayer Rugs Changes Nothing

Defendants suggest that because Muslims use "prayer mats and rugs," they do not use "seats" and, therefore, are not harmed by Local Law Number 6. Response at 10. Defendants' argument makes no sense. As an initial matter, courts analyzing RLUPA claims have interpreted similar seat-based requirements to apply to prayer mats used in mosques. *See Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 330, 342 (D.N.J. 2016) (holding that 3:1 "seat" to parking space requirement applied to a mosque, even though the "seats" at issue were "prayer mats"). Second, prior to the change in law, places of worship needed *either* "1 [parking spot] per 3 seats or, if no seats, 1 per 100 sq. ft. of floor space used for public assembly." DE 5-2 at 3. As discussed above, application of the 1-parking-spot-per-100-square-foot requirement to MOLI's mosque would have required MOLI to proffer approximately 86 parking spots—a requirement it satisfied. But the Town jettisoned the alternate standards and replaced them with a single, more onerous standard: "1 [parking spot] per 3 persons occupancy." DE 5-4 at 3. Consequently, MOLI was required to provide substantially more parking. Plaintiffs were thus harmed by the change in law regardless of which of the two previous prongs applied to them. Defendants have never contended otherwise.

Moreover, Defendants' suggestion that Plaintiffs cannot challenge Local Law Number 6 because they use prayer mats is irrelevant to Plaintiffs' facial challenge, which centers on the

5

uncontroverted fact that the law raised parking minimums for *all* houses of worship. *See* DE 5 ¶ 18. In evaluating such facial claims, the Court need not consider how Local Law Number 6 was applied "to [Plaintiffs'] particular circumstances." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).

### C. Defendants Also Treat Places of Worship Worse Than Libraries and Museums

Local Law No. 6 also treats places of worship worse than libraries and museums—secular uses recognized as appropriate comparators to houses of worship in New York State's Building Code. *See* N.Y. Building Code § 303.4 (classifying "places of religious worship" in the same category as libraries and museums for purposes of calculating occupancy). Under Local Law Number 6, libraries and museums must provide one parking spot "per 300 sq. ft. of [Gross Floor Area]." DE 5-4 at 3. The proposed mosque "has a gross floor area of 16,003.6 [square feet]," DE 4-7 at 23, and would therefore need to provide just *54* parking spots if held to the same standard as museums and libraries, a far cry from the *155* spots demanded from MOLI.

### III. LOCAL LAW NUMBER SIX VIOLATES THE FREE EXERCISE CLAUSE

#### A. Local Law Number 6 is Not a Neutral Law of General Applicability

Local Law Number 6 is not a neutral law of general applicability because it discriminates against religion on its face. *See, e.g.*, *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (holding an ordinance "explicitly imposing on 'houses of worship' restrictions inapplicable to secular activities" was facially discriminatory).

The law also lacks general applicability because it treats comparable secular uses—including theaters—more favorably than houses of worship. The Supreme Court's decision in *Tandon v. Newsom* resolves any ambiguity about the issue. There, the Court held that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the … interest that justifies the regulation at issue." 593 U.S. at 62. In other words, "[c]omparability

6

is concerned with the risks various activities pose." *Id.*; *accord Fulton v. City of Phila.*, 593 U.S. 522, 534 (2021) ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."). Thus, when evaluating whether a public health measure discriminated against religion by restricting at-home religious observance, *Tandon* only required the secular comparators to at-home religious practice to implicate similar health concerns. *See id.* at 63. The Court held that "hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants" were all "comparable secular activities" to "at-home religious exercise." *Id.* Thus, a comparator need not be like religious practices in all respects save one, so long as the government is regulating the secular and religious behavior to address the same risks.

Applying *Tandon*'s teaching here, Local Law Number 6 is not generally applicable because it imposes restrictions on religious worship not placed on secular comparators, like theaters, that pose similar traffic-related risks.

### B. Local Law Number 6 Cannot Survive Strict Scrutiny

Because Local Law Number 6 is neither neutral nor generally applicable, it must run the gauntlet of strict scrutiny. *Agudath*, 983 F.3d at 631. Defendants cannot overcome strict scrutiny because Local Law Number 6 did not further a state interest "of the highest order." *Tandon*, 593 U.S. at 65 (quotations omitted). Defendants' sole asserted compelling interest is "controlling traffic generation," Response at 19, 25, which is "normally not [a] compelling interest[]," *Congregational Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 418 (S.D.N.Y. 2015). Defendants offer no reason to depart from that normal rule.

Even if traffic control was a compelling interest, Local Law Number 6 cannot survive strict scrutiny for two reasons. First, Defendants never even mentioned traffic in their pre-litigation explanation for why it was necessary to amend the Town's ordinance to require more parking for

7

religious uses. *See* R:177–78. Defendants cannot now rely on this "*post hoc* rationalization" to overcome strict scrutiny. *Agudath*, 983 F.3d at 634–35. Second, Local Law Number 6 is not narrowly tailored as Defendants could have improved traffic safety and congestion through less restrictive means, like by ticketing illegally parked cars. *See, e.g.*, Response at 27 (admitting the Town could have ticketed cars improperly parked near the mosque but chose not to).

### IV. DEFENDANTS' DENIAL SUBSTANTIALLY BURDENED PLAINTIFFS' FREE EXERCISE

Defendants argue that they did not violate RLUIPA's substantial burden provision because MOLI "has a second building … it is not using as a mosque" and because their denial was the least restrictive means of furthering the Town's interest in "controlling traffic generation." *Id.* at 19–21. Defendants are incorrect on both points.

First, the record clearly establishes that Plaintiffs are using all space in their two buildings, right down to teaching children on the floor. *See, e.g.*, DE 6 ¶¶ 16–27 (describing MOLI's severe space constraints despite its use of both of its buildings); R:541 (testimony to the PAB that MOLI's second building is "utilized for classrooms"); R:580 (testimony to the PAB that MOLI uses bathrooms and wudu stalls in both buildings). The Town is well aware of this. *See, e.g.*, DE 4-28 at 3 (recognizing that both "existing buildings [are] currently being utilized").

Second, even if Defendants' goal of controlling traffic was compelling, Defendants' denial was not narrowly tailored. For example, Defendants rejected Plaintiffs' proposal to voluntarily cap the occupancy of the proposed mosque at a level far below its true occupancy. R:543. Plaintiffs offered to enforce this cap through "self-policing" and the fire marshal, just like any other occupancy limitation. R:543–44. That was insufficient for Defendants, who disparage Plaintiffs' proposed compromise as "delusional." *See* Zike Decl. ¶ 46. But the Town "cannot assume the worst when people go to worship but assume the best when people go to work."

8

*Tandon*, 593 U.S. at 64 (quotations omitted). As a matter of law, the same self-policing (and actual policing) that regulates *all* occupancy limits in Oyster Bay should have been deployed to regulate MOLI's occupancy. *Id.* (explaining California could not refuse to allow "home worshipers to gather in large[] numbers" on the grounds that the "precautions used [for] secular activities" would not work for religious activity). And in any event, there are many ways Defendants could have promoted their interest in regulating traffic short of denying Plaintiffs' application, such as by installing speed bumps or by ticketing illegally parked cars.

## V. DEFENDANTS' DENIAL VIOLATED RLUIPA'S NONDISCRIMINATION PROVISION AND THE FREE EXERCISE CLAUSE

In their opening, Plaintiffs identified indicia of intentional discrimination, including: Defendants' passage of a facially discriminatory parking ordinance, their subsequent denial of MOLI's application after being inundated with Islamophobic advocacy, and the significant procedural irregularities that Plaintiffs encountered along the way. *See* DE 3 at 7–9, 21–23. Plaintiffs further demonstrated that PAB's written denial admitted to tolerating "many [other] non-conforming non-residential uses," mischaracterized some "testimony," and invented other "testimony" from whole cloth—points Defendants ignore. *See id.* at 12–14, 23–24. This misconduct—just a sample of the evidence that has come to light so far—establishes discriminatory intent, particularly as Defendants' denial "prevented the establishment of [Plaintiffs'] mosque." *Al Falah Ctr.*, 2013 WL 12322637, at *7. After all, the "effect of a law in its real operation is strong evidence of its object." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993). Such intent, coupled with Defendants' inability to survive strict scrutiny, establishes Plaintiffs' clear likelihood of success on the merits of their nondiscrimination and free exercise claims.

Defendants respond that their denial was nondiscriminatory because they "adhered to the NCPC's recommended denial" and because the traffic reports "of the Town's consultant[s]" were "unreliable and unacceptable." Response at 23. But, as demonstrated, NCPC's decision to recommend a denial to the PAB was itself infected with anti-Muslim animus. *See* DE 3 at 9–11. Moreover, NCPC's decision was not binding on the PAB. Thus, the NCPC's role in the process cannot relieve Defendants of their own liability. Nor can Defendants disclaim their *own* traffic consultants' findings, especially as Defendants offer no contrary study to rebut what DER—the Town's own unit responsible for managing the consultants—termed a "comprehensive analysis" of traffic issues. *See id.* at 5–6. Defendants' excuses fall especially flat as they are *post hoc* justifications absent from their written denial, which did not purport to be bound by NCPC and did not justify ignoring the findings of Defendants' consultants and DER. *See* DE 4-28 at 3–5.

Defendants fare no better with their argument that "places of worship have not been singled out" because other "secular land uses have the same off-street parking formula imposed." Response at 24. "It is no answer that a [government] treats some comparable secular … activities as poorly as … the religious exercise at issue." *Tandon*, 593 U.S. at 62. The question is whether "*any* comparable secular [land use]" is treated more favorably. *Id.* Theaters unquestionably are.

## VI. THE TOWN'S DENIAL VIOLATED ARTICLE 78

Defendants' denial of Plaintiffs' application was arbitrary and capricious for many reasons, *see* DE 3 at 25–28, not least that they failed to suggest any measures to accommodate Plaintiffs' proposed religious use in violation of a long line of cases requiring them to do so. *See, e.g., Capriola v. Wright*, 900 N.Y.S.2d 754, 756 (2d Dep't 2010); *St. Thomas Malankara Orthodox Church, Inc., Long Island v. Bd. of Appeals, Town of Hempstead,* 804 N.Y.S.2d 801, 802 (2d Dep't 2005). Defendants also improperly ignored the findings of MOLI's consultants, the Town's consultants, and especially DER—which concluded that approving MOLI's application would

10

"improve traffic safety," DE 4-7 at 10—in favor of comments by town residents that were "uncorroborated by empirical evidence or expert opinion," *Ernalex Construction Realty Corp. v. Bellissimo*, 681 N.Y.S.2d 298, 300 (2d Dep't 1998).  The proper remedy for this unlawful denial is not the do-over Defendants request, Response at 28, but for Defendants "to grant site plan approval forthwith," *J&R Espositio Builders, Inc. v. Coffman*, 584 N.Y.S.2d 73, 73 (2d Dep't 1992).

## VII. THE REMAINING FACTORS FAVOR PLAINTIFFS

Defendants' two-sentence argument that the balance of equities and the public interest militate against an injunction falls short.  Response at 29.  Defendants first claim that an injunction would harm *Plaintiffs*.  *Id.*  But Plaintiffs understand they will not be able to worship in their dilapidated facility while it is being torn down and renovated and are not harmed by this.  Defendants' argument is too cute by half.  Under Defendants' logic, they can preclude any house of worship from undertaking much-needed renovations and then argue that it was for the worshippers' own good because Defendants did not want to deprive them of their house of worship.  Next, Defendants argue that "there would … be no way to restore the status quo" once MOLI's buildings are demolished, *id.*, but it is *Plaintiffs'* problem if they demolish their buildings at risk and cannot rebuild them, not the public's.  Finally, Defendants cite a vague public interest in "code enforcement."  *Id.*  However, "[n]o public interest is served" by enforcing laws that violate religious liberty.  *See Agudath*, 983 F.3d at 637.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their injunction.

11

Dated: New York, New York
March 28, 2025

Respectfully submitted,

Linklaters LLP

By:  /s/ *Muhammad U. Faridi*
Muhammad U. Faridi
Diana M. Conner
Peter Vogel
1290 Avenue of the Americas,
New York, NY 10104
(212) 903-9000
(212) 903-9100 (fax)

*Attorneys for Plaintiffs*

12

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs hereby certifies that this brief contains 3483 words, which complies with the word limit of Joint Local Rule 7.1(c) and Judge Bulsara's Individual Practice VI.E.

Dated:   New York, New York
         March 28, 2025

                                        Respectfully submitted,

                                        Linklaters LLP

                                        By:   /s/ *Muhammad U. Faridi*
                                        Muhammad U. Faridi
                                        Diana M. Conner
                                        Peter Vogel
                                        1290 Avenue of the Americas,
                                        New York, NY 10104
                                        (212) 903-9000
                                        (212) 903-9100 (fax)

                                        *Attorneys for Plaintiffs*

13