## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

MUSLIMS ON LONG ISLAND, INC., )
IMRAN MAKDA, and )
MOEEN QURESHI, )
      )
                 Plaintiffs, )      Civil Action No. 2:25-cv-00428 (SJB-JMW)
      )
             v. )
      )
THE TOWN OF OYSTER BAY, )
SCOTT BYRNE, )
in his official capacity, )
JAMES CASTELLANE, )
in his official capacity, )
CLIFFORD CHABINA, )
in his official capacity, )
ANTHONY DILEONARDO, )
In his official capacity, )
ANGELO STANCO, )
in his official capacity, and )
LOUIS WARNER, )
in his official capacity, )
      )
                Defendants. )
_____)

## UNITED STATES' STATEMENT OF INTEREST IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

JOHN J. DURHAM
United States Attorney
Eastern District of New York

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

MICHAEL J. GOLDBERGER
Assistant U.S. Attorney
*Of Counsel*

NOAH SACKS
BETH PEPPER
Trial Attorneys
Housing and Civil Enforcement
Section
Civil Rights Division

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENT ..................................................................................................................... 4

   I.    Plaintiffs are Likely to Succeed on the Merits of their RLUIPA Equal Terms Claim ....... 6

     A.    Oyster Bay Treats Places of Worship on Less than Equal Terms to Secular Uses ........ 6

           1.  Oyster Bay Treats Houses of Worship Less Favorably than Theaters………..6

           2. Oyster Bay Treats Houses of Worship Less Favorably than Libraries and Museums……………………………………………………………………..7

     B.    Oyster Bay Offers No Reason of Substance for Treating a Religious Assembly on Less Than Equal Terms to a Secular One. .................................................................. 10

CONCLUSION ............................................................................................................. 166

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene,*
 763 F.3d 183 (2d Cir. 2014) ................................................................................ 4

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma,*
 651 F.3d 1163 (9th Cir. 2011) ......................................................................... 8, 12

*Chabad Lubavitch of Litchfield Cty., Inc.* v. *Litchfield Historic Dist. Comm'n,*
 768 F.3d 183 (2d Cir. 2014) ................................................................................ 5

*Chabad of Nova, Inc. v. City of Cooper City,*
 533 F.Supp.2d 1220 (S.D. Fla. 2008) .................................................................. 7

*Christian Fellowship Centers of New York, Inc. v. Vill. of Canton,*
 377 F. Supp. 3d 146 (N.D.N.Y. 2019) ............................................................. 5, 9

*Digrugilliers v. Consol. City of Indianapolis,*
 506 F.3d 612 (7th Cir. 2007) ............................................................................... 8

*New Harvest Christian Fellowship v. City of Salinas,*
 29 F.4th 596 (9th Cir. 2022) ................................................................... 6, 7, 13-14

*Opulent Life Church v. City of Holly Springs,*
 697 F.3d 279 (5th Cir. 2012) ............................................................................... 8

*River of Life Kingdom Ministries v. Vill. of Hazel Crest, Illinois,*
 611 F.3d 367 (7th Cir. 2010) ............................................................................... 6

*Roman Catholic Diocese of Rockville Centre, N.Y. v. Incorporated Village of Old Westbury,*
 2012 WL 1392365 (E.D. N.Y. Apr. 23, 2012) ................................................... 10

*Summit Church v. Randolph Cnty. Dev. Auth.,*
 2016 WL 865302 (N.D.W. Va. Mar. 2, 2016) ..................................................... 8

*Tandon v. Newsom,*
 593 U.S. 61 (2021) ............................................................................................. 13

*Third Church of Christ, Scientist, of New York City* v. *City of New York,*
 626 F.3d 667 (2d Cir. 2010) ........................................................................ passim

*United States v. Bensalem Twp.,*
 220 F. Supp.3d 615 (E.D. Pa. 2016) .................................................................... 8

*United States v. City of Troy*,
  592 F.Supp.3d 591 (E.D. Mich. 2022) ........................................................ 7, 8, 10, 15

**Statutes**

28 U.S.C. § 517 ........................................................................................................ 1

42 U.S.C. § 2000cc .................................................................................................. 1

42 U.S.C. § 2000cc-2(f) .......................................................................................... 1

42 U.S.C. § 2000cc-3(g) .......................................................................................... 4

42 U.S.C. § 2000cc(b)(1) ......................................................................................... 4

**Other Authorities**

Fed. Prac. & Proc. § 2949 (3d ed. 1998) .................................................................. 2

## INTRODUCTION

Plaintiffs in this action, Muslims on Long Island, Inc. ("MOLI"), Imran Makda, and Moeen Qureshi (collectively "Plaintiffs" or "MOLI"), claim that Defendants, the Town of Oyster Bay, *et al.* (collectively, "the Town" or "Oyster Bay") have, among other things, violated the equal terms provision of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*  As set forth in Plaintiffs' complaint and motion for a preliminary injunction, the Town has denied MOLI's application for a permit to construct a mosque capable of meeting the needs of its congregants in Bethpage, New York, relying on a recently revised parking code requiring MOLI to construct more parking spaces than is feasible. As set forth below, in the United States' view, Plaintiffs are likely to succeed on the merits of their RLUIPA equal terms claim[1] because, under the recently revised parking code, MOLI is treated less favorably than comparable secular uses such as theaters, libraries, and museums, and the Town cannot and does not show that such unequal treatment is justified.

The United States respectfully submits this Statement of Interest under 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  The United States has an interest in protecting the rights guaranteed by RLUIPA.  In addition to creating a private cause of action, RLUIPA charges the Attorney General with enforcing its provisions.  *See* 42 U.S.C. § 2000cc-2(f).

---

[1] The United States takes no position on the parties' other claims or arguments.

1

## FACTUAL BACKGROUND

MOLI has existed at its current location since 1998.  Declaration of Imran Makda ("Makda Decl.") ¶ 10, ECF No. 6.[2]  Since that time, MOLI's congregation has grown, and its existing buildings are inadequate to meet its congregation's religious needs.  *Id*. ¶¶ 16-27. Accordingly, in 2018, MOLI submitted to the Town a plan to convert its current buildings into a proper house of worship with facilities sufficient to allow for religious worship and gathering, including space for prayer, religious education, ritual washing, and religious counseling.  *Id*.  ¶¶ 16-28.

When MOLI submitted its initial site plan application, the Town's parking ordinance required houses of worship to have at least one parking space for every three *seats* or, "if no seats," one space "per 100 sq. ft. of floor space used for public assembly."  Declaration of Alan Weinstein ("Weinstein Decl.") ¶ 15, ECF No. 5, and Ex. 2, ECF No. 5-2 (Town of Oyster Bay Code § 246-8.2.2, "Schedule of Off-Street Parking and Loading Requirements").  MOLI's proposed plan called for 86 parking spaces, which satisfied the Town's parking standard *then applicable* to houses of worship.  Makda Decl. ¶ 39; *see also,* ECF 4-2 at 2 (email from Jeff Vitale of the Town of Oyster Bay dated June 10, 2022).  Theaters had (and still have) virtually the same requirement, at one parking space per three seats.  ECF No. 5-2.  Other nonreligious assembly uses such as libraries and museums were (and still are) required to have one space per 300 square feet of gross floor area.  *Id*.

---

[2] In connection with the factual background section, the United States cites to declarations submitted by the Plaintiffs in support of their Motion for Preliminary Injunctive Relief.  ECF No. 3.  *See generally*, 11A WRIGHT & MILLER, FED. PRAC. & PROC. § 2949 (3d. ed.) (evidentiary standards for preliminary injunction hearings to include affidavits).

2

In 2022, while MOLI's application was advancing through the site plan review process, the Town amended the parking requirement for places of worship, enacting Local Law No. 6. Weinstein Decl. ¶¶ 16-17 and Ex. 3, ECF No. 5-3 ("Local Law No. 6") and Ex. 4, ECF No. 5-4 (Town of Oyster Bay Code § 246-8.2.1, "Schedule of Off-Street Parking and Loading Requirements").  Under this new ordinance, places of worship must now provide one parking space for every three *occupants* (the "occupancy-standard").  Weinstein Decl. ¶ 16; ECF. No. 5-4.  This new parking requirement is more onerous than the previous standard and significantly increased the number of parking spaces places of worship must provide because occupancy includes *all usable space* in a building while requirements based on "seats" or "floor space used for public assembly" include only a subset of that total usable space.  Weinstein Decl.  ¶ 18.

Under the new parking standard for houses of worship, the Town determined that MOLI's proposal "has a total assembly occupancy rating of 464 persons, requiring 155 spaces"—nearly double what was required under the standard in place when MOLI first submitted its site plan to the Town.  Declaration of Muhammad U. Faridi ("Faridi Decl.") ¶ 23, ECF No. 4; Ex. 20 at 2, ECF 4-20; Ex 21 at 18, ECF No. 4-21.  While the Town switched the standard for houses of worship to a more onerous occupancy-standard, it left intact the more favorable parking standards for secular uses, such as theaters, which remained at "1 per 3 seats" and, libraries and museums, which remained at "1 [parking space] per 300 sq. feet of GFA (Gross Floor Area)."  ECF No. 5-2 at 3.  Indeed, if the Town had applied the same parking standard for libraries and museums to the MOLI application, only 53 spaces would have been required.   ECF No. 5-4.[3]

---

[3] MOLI's application contemplates that the proposed building will have a gross floor area of approximately 16,000 square feet.  *See* ECF No. 4-6 at 5.  Under the museum and library standard, that equates to approximately 53 parking spaces.

MOLI cannot satisfy this new occupancy parking requirement due to the constraints of the size of its property, making it infeasible for the mosque to be built.  Faridi Decl. ¶ 20; ECF No. 4-20.  On November 14, 2024, the Town's Planning Advisory Board denied MOLI's site plan application, even though, except for parking, all site plan issues were "satisfactorily addressed."  ECF No. 4-20 at 4. ECF No. 4-27 at 2-4; ECF No. 4-28.  Following that denial, MOLI filed this action, alleging among other claims, a RLUIPA equal terms claim, ECF No. 1, along with a Motion for a Preliminary Injunction on its RLUIPA claims.  ECF No. 2-7.

## ARGUMENT

To obtain a preliminary injunction on their RLUIPA claim, Plaintiffs must show that they are likely to succeed on the merits.  *Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene,* 763 F.3d 183, 192 (2d Cir. 2014).  Here, Plaintiffs are likely to succeed on the merits of their RLUIPA equal terms claim because they have shown that the Town has imposed a more onerous parking requirement on houses of worship than on secular assembly uses such as theaters, museums and libraries.  Further, the Town identifies no reason of substance for treating the comparable uses unequally.  *Third Church of Christ, Scientist, of New York City* v. *City of New York*, 626 F.3d 667, 672-73 (2d Cir. 2010).[4]

RLUIPA's "equal terms" provision provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution," 42 U.S.C. § 2000cc(b)(1), and must be "construed in favor of a broad protection for religious exercise, to the maximum extent permitted by the terms of [RLUIPA] and the Constitution."  42 U.S.C. § 2000cc-3(g).

---

[4] The United States expresses no opinion on the other requirements for obtaining a preliminary injunction.

A plaintiff asserting an equal terms claim bears the initial burden to "'produce[] *prima facie* evidence to support a claim' of unequal treatment, after which the 'government…bear[s] the burden of persuasion on any element of the claim.'" *Chabad Lubavitch of Litchfield Cty., Inc.* v. *Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 196 (2d Cir. 2014) (citing 42 U.S.C. § 2000cc–2(b)).  "Determining whether a municipality has treated a religious entity 'on less than equal terms' requires" a court to compare "that religious entity and a secular one." *Third Church of Christ,* 626 F.3d at 669.  Although the Second Circuit has "yet to decide the precise outlines of what it takes to be a valid comparator under RLUIPA's equal-terms provision," *id.* at 669, it has held that "RLUIPA… is less concerned with whether formal differences may be found between religious and non-religious institutions—they almost always can—than with whether, in practical terms, *secular and religious institutions are treated equally*." *Id.* at 671 (emphasis added).  Therefore, "formal differences" between religious and secular "institutions [that] are similarly situated for all functional intents and purposes" cannot justify regulatory distinctions between them.  *Id.* at 668; *see also Christian Fellowship Centers of New York, Inc. v. Vill. of Canton*, 377 F. Supp. 3d 146, 159-60 (N.D.N.Y. 2019) (applying *Third Church of Christ* and finding that museums and theaters were comparable secular places of assembly to houses of worship).

A plaintiff can show "less than equal" treatment by pointing to zoning enforcement that treats similar uses unequally.  *Third Church of Christ*, 626 F.3d at 668 (holding that City's enforcement of accessory use law to prevent catering activities against a church, but not hotels, violated RLUIPA's equal terms provision).  A plaintiff can also show unequal treatment by demonstrating that an ordinance treats religious assembly use worse than secular assembly uses.  *See Christian Fellowship Centers*, 377 F. Supp. 3d at 157 (finding zoning ordinance that restricted houses of worship, but not nonreligious assembly uses, violated RLUIPA's equal terms

provision).  To rebut a *prima facie* case, the Second Circuit requires that a municipality demonstrate that the "inequality of treatment has ceased, or is, *for other reasons of substance, non-discriminatory*."  *Third Church of Christ*, 626 F.3d at 672-73 (emphasis added).

In sum, once the religious organization establishes that it is restricted by a zoning law that differentiates between religious and secular assemblies or institutions, a violation of RLUIPA is proven unless the government demonstrates that the apparent unequal treatment is "for other reasons of substance, nondiscriminatory."  *Third Church of Christ*, 626 F.3d at 673.  Because the Town of Oyster Bay cannot meet this burden, Plaintiffs are likely to prevail on the merits of their equal-terms claim under RLUIPA.

I.    **Plaintiffs are Likely to Succeed on the Merits of their RLUIPA Equal Terms Claim**

A.    <u>Oyster Bay Treats Places of Worship on Less than Equal Terms to Secular Uses</u>

<u>1. Oyster Bay Treats Houses of Worship Less Favorably than Theaters</u>

The Plaintiffs have established a *prima facie* case that Local Law No. 6 violates RLUIPA's equal terms provision.  Local Law No. 6 imposes more burdensome parking requirements on places of worship than comparable secular assemblies such as theaters.  While secular gatherings at theaters must provide one parking space "per 3 *seats*," places of worship are, instead, subject to the more onerous standard of "1 [parking space] per 3 *persons occupancy*." Weinstein Decl. ¶¶ 17-18; ECF No. 5-4 (emphasis added).

Courts have widely acknowledged theaters to be comparable secular assembly uses to houses of worship, including for their impact on traffic.  *See New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 607–08 (9th Cir. 2022) ("[T]heatres … are similarly situated to religious assemblies."); *River of Life Kingdom Ministries v. Vill. of Hazel Crest, Illinois*, 611 F.3d 367, 373 (7th Cir. 2010) (en banc) ("[A] church is more like a movie theater, which also

6

generates groups of people coming and going at the same time."); *United States v. City of Troy*, 592 F.Supp.3d 591, 605 (E.D. Mich. 2022) (finding that places of worship "have similar impacts on traffic, safety and neighboring properties" as nonreligious assembly uses like theaters "where large groups of people come and go at set times."); *Chabad of Nova, Inc. v. City of Cooper City*, 533 F.Supp.2d 1220, 1221 (S.D. Fla. 2008) (finding that zoning code that permits nonreligious assemblies like "movie theaters," but prohibits houses of worship violated RLUIPA's equal terms provision).  Congress, in enacting RLUIPA, also viewed theaters as comparable to places of worship.  *See* H.R. Rep. No. 106-219 ("House Report"), at 19–20 (1999) ("[T]heaters are often permitted as of right in zones where churches require a special use permit.").

As the Ninth Circuit explained, theaters are comparable secular uses to houses of worship because they:

> are open only on certain days of the week and for certain portions of the day; they attract sporadic foot traffic around their opening hours; and while they have some regular patrons, they are also open to newcomers. Some patrons come from nearby; others drive miles to attend. When it comes to the "eyes on the street" effect, theatres generally do not have large windows facing the street with people visible inside.

*New Harvest Christian Fellowship*, 29 F.4th at 608.  Indeed, even the Town concluded that places of worship and theaters had comparable parking needs, as it previously imposed similar parking requirements on them.  By now seeking to subject MOLI and other places of worship to more stringent parking requirements than comparable secular uses, Oyster Bay has violated RLUIPA's equal terms provision.

### 2. Oyster Bay Treats Houses of Worship Less Favorably than Libraries and Museums

Additionally, Local Law No. 6 violates RLUIPA's equal terms provision because it imposes more burdensome parking requirements on places of worship than comparable secular

uses such as libraries and museums. While libraries and museums only require "1 [parking space] per 300 sq. feet of GFA (Gross Floor Area)," (the "GFA standard"), places of worship require the more onerous standard of "1 [parking space] per 3 persons occupancy." Weinstein Decl. ¶¶ 17-18; ECF No. 5-4. The GFA standard would require approximately 53 parking spaces for MOLI's proposed 16,000 square foot mosque, while the occupancy standard requires 155 spaces. This is unequal treatment. *See Troy*, 592 F.Supp.3d at 606 (finding that zoning provisions that required stricter parking setbacks for houses of worship than nonreligious assembly uses violated RLUIPA's equal terms provision).

Courts have repeatedly found that libraries and museums are comparable nonreligious assemblies for RLUIPA equal terms claims. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 293-94 (5th Cir. 2012) (holding that zoning code which bans religious facilities, but permitted nonreligious institutions such as "libraries, museums, [and] art galleries" violated RLUIPA's equal terms provision); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1173 (9th Cir. 2011) (deciding that "no accepted zoning criteria justifies the exception of religious organizations in the 'as of right' ordinance provision," when ordinance permitted nonreligious assembly uses such as "membership organizations," "museums," "art galleries," and "auditoriums"); *Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 612, 615 (7th Cir. 2007) (holding ordinance that allowed uses including assembly halls, art galleries, civic clubs, libraries, and museums, but prohibited religious assembly uses violated RLUIPA's equal terms provision); *Summit Church v. Randolph Cnty. Dev. Auth.*, No. 2:15-CV-82, 2016 WL 865302, at *3 (N.D.W. Va. Mar. 2, 2016) (finding that museums and libraries were comparable "non-religious assemblies" under RLUIPA's equal terms provision); *United States v. Bensalem Twp.*, 220 F. Supp.3d 615, 621 (E.D. Pa. 2016) (finding allegation that zoning district permitted

8

secular uses, such as cultural and educational institutions, but required a "use variance" "for a religious purpose" supported plaintiff's RLUIPA equal terms claim); s*ee generally* House Report at 19 (survey results show that a litany of secular uses, including "libraries, museums, municipal buildings, meeting halls, and theaters are often permitted as of right in zones where churches require a special use permit, or…are wholly excluded").

Indeed, museums, as a practical matter, are frequently a more intensive use than houses of worship and can host hundreds or more visitors each day.  Libraries attract a constant stream of visitors and often host social gatherings and events.  Both libraries and museums can host large events, yet they are subject to a less burdensome requirement of one parking spot per 300 hundred square feet of gross floor area.[5]  Houses of worship are no more an intense use than museums and art galleries but are subject to a substantially more burdensome occupancy standard for parking.

Thus, because Oyster Bay's parking requirement treats religious assemblies less favorably than comparable secular assemblies, such as theaters, museums, and libraries, MOLI has shown a prima facie violation of RLUIPA's equal terms provision.  *See, e.g., Christian Fellowship Ctrs.,* 377 F.Supp.3d at 157 (finding that church's equal-terms challenge is "likely to succeed under even the most demanding tests" because the ordinance at issue, which prohibited

---

[5] In attempting to justify the occupancy standard, the Town claims that places of worship host "community service events, classrooms, social gatherings, celebrations, and communal meals." *See* Opp. at 15.  But these are exactly the sorts of activities that can and do take place at nonreligious places of assembly, such as libraries and museums, including those in Oyster Bay. *See, e.g.* Raynham Hall Museum, https://raynhamhallmuseum.org/gallery-of-past-events/; Oyster Bay Railroad Museum, https://obrm.org/; Oyster Bay Historical Society, https://www.oysterbayhistorical.org/2024-exhibitions-and-events.html; Oyster Bay Library, https://www.oysterbaylibrary.org/ (listing events); https://oysterbaytown.com/wp-content/uploads/2025-Spring-Distinguished-Artist-Brochure.pdf (listing musical events for the "library concert series") (last visited April 11, 2025).

houses of worship in downtown retail commercial districts, "treats religious assemblies less well than secular assemblies that have equivalent impacts on its purposes"); *Roman Catholic Diocese of Rockville Centre, N.Y. v. Incorporated Village of Old Westbury*, 2012 WL 1392365 *11, Case No. 09-cv-5195 (E.D.N.Y. April 23, 2022) (granting plaintiff's motion to amend its pleading to assert a RLUIPA equal terms claim where defendant's adoption of a law "imposed overly stringent and burdensome conditions on the development of the Diocese's Property that were not imposed on land owners seeking to develop their properties for non-religious uses"); *Troy*, 592 F.Supp.3d at 606 (finding that United States established prima facie equal terms case because "where Troy allows places of worship to operate, it permits at least one nonreligious assembly use with similar impacts on traffic, safety, and neighbors to operate under less restrictive setback and parking standards").

    B.  <u>Oyster Bay Offers No Reason of Substance for Treating a Religious Assembly on Less Than Equal Terms to a Secular One.</u>

Because MOLI has put forward evidence of a *prima facie* case of unequal treatment, the burden shifts to the Town to identify a "reason[] of substance" for imposing the more onerous occupancy-based parking standard on houses of worship while other assembly uses receive more favorable treatment. *Third Church of Christ*, 626 F.3d at 673. The Town fails to satisfy this burden.

Contrary to the Town's claim, *see* Opp. at 13-14, the sparce legislative record does not provide any "reason of substance" under the Second Circuit standard for singling out houses of worship for an occupancy-based parking standard. At the May 10, 2022, Town Council meeting, which was the only meeting where the Town Council publicly discussed the parking amendment for places of worship, then Town Commissioner Maccarone explained the proposed change in parking:

> Places of Worship -- again, the Code requires one spot for every
> three occupants. A lot of times when applications come in, they're
> coming in with one per three seats, but seats and occupants are two
> different things because you have standing areas that people
> worship when they're standing as opposed to sitting. They're
> calculated differently under the Public Assembly Laws as well as
> the New York State Building Code, so we're clarifying that.

*See* ECF No. 4-4 at 29-30; *see also* Opp. at 13-14 (citing Town Council minutes and explaining that "places of worship often have standing areas, open floor plans, and flexible seating arrangements that accommodate different modes of congregations").  Two separate justifications are offered by the Town here: first, that the parking requirement for houses of worship needed to be revised because some places of worship might not have seats or may have people standing as opposed to sitting; and second, that the New York State Building Code warrants treating houses of worship "differently."  Neither claim justifies the unequal treatment.

First, the former parking standard for houses of worship unmistakably considered "flexible seating arrangements" and "different modes of congregations," namely, that some places of worship have seats (e.g., churches and synagogues) while others do not (e.g., mosques and Buddhist temples).  It already solved for that possibility by providing that "if [there are] no seats," the parking requirement is one parking space "per 100 sq. ft. of floor space used for public assembly." ECF No. 5-2.  In other words, if a house of worship does not have seats in the assembly area—like a mosque—the standard was sensibly based on the size of the *assembly area* where people worship, not the *occupancy of the entire building*.[6]  Accordingly, that worshippers may stand or not use seats at houses of worship such as mosques was already built into the

---

[6] This is essentially the same formula for "meeting and banquet rooms" at "private membership clubs."  *See* ECF No. 5-4, Oyster Bay Code § 246-8.2.1.

former parking standard and is therefore not a reason of substance that justifies the unequal treatment for places of worship.[7]

Moreover, the Town did not change the parking standard for *other places of assembly* where people also stand, like libraries and museums. *See* ECF No. 5-4, Oyster Bay Code § 246-8.2.1. Museums typically have rooms full of exhibits where people walk through. Libraries have stacks of books that people peruse. Museums and libraries may also have sections with chairs or rooms with seating, but most visitors spend significant time standing—like worshippers at a mosque. Yet, the Town does not require that libraries and museums have one parking space per three occupants as required for houses of worship. Instead, libraries and museums have a much more generous requirement—one parking space per 300 square feet of gross floor area. *Id*. MOLI's proposed mosque, of course, easily meets that standard.[8] Accordingly, "people standing" is not a sufficient reason of substance to justify treating houses of worship worse than other places of assembly where people also stand, including libraries and museums. *See, e.g.,* *Centro Familiar*, 651 F.3d at 1167 and 1173 (finding that "no accepted zoning criteria" justified the unequal treatment of religious organizations compared to nonreligious assembly uses such as "membership organizations," "museums," "art galleries," and "auditoriums").

Second, the New York State Building Code does not justify singling out religious assembly use for occupancy-based standards. To the contrary, the New York State Building Code recognizes that places of worship belong in the same assembly classification as libraries

---

[7] Indeed, there is evidence in the record that, under the original ordinance, the Town calculated that MOLI would need 86 parking spaces by computing the square footage of the areas of public assembly. ECF No. 39-1 at 47.

[8] As discussed above, MOLI's proposed 16,000 square foot mosque would require approximately 53 parking spaces under the museum and library's 1 parking space per 300 square of gross floor area formula. MOLI's proposed mosque calls for 86 spaces. Makda Decl. ¶ 39.

and museums.  *See* New York State Building Code, Article 18, Section 303.4 ("Assembly Group A-3 occupancy includes assembly uses intended for worship, recreation or amusement and other assembly uses not classified elsewhere in Group A, including… 'Libraries,…Museums…Places of religious worship.").  If anything, the New York State Building Code supports treating places of worship the same as nonreligious places of assembly such as libraries and museums.

The Town's *other* excuses for singling out places of worship for an occupancy standard for parking but not nonreligious places of assembly also fall flat.  For example, the Town attempts to justify the occupancy standard by comparing places of worship to "bars, discotheques, and dance halls," which also have an occupancy-based parking standard under Oyster Bay's code.  Opp. at 14-15.  But bars, discotheques, and dance halls are much less comparable to places of worship than theaters, museums, and libraries.  Bars and dance halls operate mainly at night and primarily serve alcohol and food.  *See* Oyster Bay Code § 246-2.4 (defining "dance hall" and "discotheque" as "[a]ny premises where, in conjunction with the sale or service of food and/or drinks, patrons are intended to dance to live or recorded music and/or to be entertained by performers.").[9]  Dance clubs and bars are much more likely to operate at or near full occupancy on a regular basis than a place of worship, which rarely ever operates at full capacity.[10]  Weinstein Decl. ¶¶ 27-28.  In any event, "[i]t is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue."  *Tandon v. Newsom*, 593 U.S. 61, 62 (2021); *see also New Harvest*

_____

[9] Bars are defined as a "building or any part thereof in which there is primarily served and offered for sale beer, wine, and/or liquor for consumption on premises."  Oyster Bay Code § 246-2.4.  One would be very unlikely to regularly encounter the sale of alcohol at a place of worship, and even less so at a mosque.

[10] Moreover, MOLI does not plan to use all portions of the proposed mosque simultaneously.  Makda Decl.  ¶ 37.

*Christian Fellowship*, 29 F.4th at 607 (holding that to rebut a prima facie equal terms case, the government must show that "the religious assembly or institution is treated as well as *every* other nonreligious assembly or institution that is "similarly situated" with respect to that criterion.") (emphasis added). Accordingly, even if places of worship and dance halls function similarly— which they do not—that Oyster Bay treats parking for places of worship similar to bars and dance halls cannot justify, as a matter of law, treating places of worship worse than other comparable nonreligious places of assembly such as theaters, museums and libraries.

Finally, the Town accidentally concedes that its parking ordinance treats houses of worship unequally when it cites the parking codes for the Town of North Hempstead and Village of Great Neck. *See* Opp. at 10 (citing Town of North Hempstead Code § 70-103 and Village of Great Neck Code § 575-156). While these jurisdictions do appear to impose occupancy-based parking restrictions, they do so for *all* places of assembly, religious and nonreligious alike. The Town of North Hempstead imposes an occupancy parking standard for any "[p]lace of public assembly or place of assembly, exclusive of restaurants (theater, lodge, club, hall, church, auditorium, bowling, gym, fitness center, etc.)." Town of North Hempstead Code § 70-103. Similarly, the Village of Great Neck has an occupancy-based standard for "[p]laces of public assembly and restaurants." Village of Great Neck Code § 575-156. But unlike Oyster Bay, when it comes to occupancy-based parking standards, these jurisdictions do not single out places of worship for more onerous parking requirements and instead treat them equal to nonreligious places of assembly.

RLUIPA's equal terms provision requires that parking regulations be applied equally to religious and comparable nonreligious assembly uses. Oyster Bay's parking regulations for places of worship are more onerous than comparable nonreligious assembly uses. Oyster Bay

14

has not and cannot show that "the [apparent] inequality of treatment" of MOLI and places of worship is "for other reasons of substance, non-discriminatory." *Third Church of Christ*, 626 F.3d at 673; *see also New Harvest Fellowship*, 29 F.4th at 608 (City failed to shoulder its burden that the zoning provision at issue treats the religious organization "on equal terms with similarly situated nonreligious assemblies" where the zoning code prohibits the religious group from "hosting worship services on the ground floor of the Main Street Restricted Area but permits theaters to operate on the ground floor in that area."); *City of Troy,* 592 F.Supp.3d at 606 ("Troy has not presented evidence that justifies this less favorable treatment or more restrictive place of worship standards" where it imposed parking criteria on religious uses that it had not imposed on secular uses.).

## CONCLUSION

For the foregoing reasons, the Court should find that the Plaintiffs have established a

likelihood of success on the merits of their RLUIPA equal terms claim.

Dated: April 11, 2025

Respectfully submitted,

JOHN J. DURHAM                          HARMEET K. DHILLON
United States Attorney                   Assistant Attorney General
Eastern District of New York             Civil Rights Division


                                         MICHAEL E. GATES
                                         Deputy Assistant Attorney General
                                         Civil Rights Division


 _s/_Michael J. Goldberger_                _s/Beth Pepper_
MICHAEL J. GOLDBERGER                    NOAH SACKS
Chief of Civil Rights                    BETH PEPPER
Civil Division                           Trial Attorneys
United States Attorney's Office          Housing and Civil Enforcement Section
Eastern District of New York             Civil Rights Division
271-A Cadman Plaza East                  U.S. Department of Justice
Brooklyn, NY 11201                       4 Constitution Square
Phone: 718-254-6052                      150 M Street NE Room 8.1110
Email: Michael.goldberger@usdoj.gov      Washington DC 20002
                                         Phone: 202-532-3886
                                         Email: Beth.Pepper@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the United
States District Court for the Eastern District of New York through the CM/ECF system, which
will send a Notice of Electronic Filing to registered CM/ECF participants.

                          _/s/ Michael J. Goldberger_
                          Attorney for the United States of America

16

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(C)</u>

I hereby certify that Defendant's Memorandum of Law, dated April 11, 2025 complies with the requirements of Local Rule 7.1(c), in that it contains 4,927 words.

Dated:  April 11, 2025
       Brooklyn, New York

<u>/s/ Michael J. Goldberger</u>
Assistant U.S. Attorney

17