UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MUSLIMS ON LONG ISLAND, INC., IMRAN
MAKDA, and MOEEN QURESHI,

              Plaintiffs,

**ORDER**

25-cv-00428 (SJB) (JMW)

    -against-


THE TOWN OF OYSTER BAY,

             Defendant.
-----------------------------------------------------------------X

**A P P E A R A N C E S:**

    Diana Marie Conner
    Muhammad U. Faridi
    Dalia Ossama Elmelige
    Julia Haigney Long
    Kailyn LaPorte
    Peter Vogel
    **Linklaters LLP**
    1290 Avenue of the Americas
    New York, NY 10104
    *Attorneys for Plaintiffs*

    Edward Michael Ross
    Judah Serfaty
    **Rosenberg Calica & Birney LLP**
    100 Garden City Plaza, Suite 408
    Garden City, NY 11530
    *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

    Plaintiff Muslims on Long Island ("MOLI"), Imran Makda, and Moeen Qureshi

(collectively, "Plaintiffs") commenced this action on January 24, 2025 seeking to enforce their

1

rights under the Religious Land Use and Institutional Persons Act, 42 U.S.C. § 2000cc, the First and Fourteenth Amendments to the United States Constitution, the New York State Constitution, and Article 78 of the New York Civil Practice Laws and Rules following Defendant Town of Oyster Bay ("Defendant" or "Town"), Angelo Stanco, Scott Byrne, Clifford Chabina, Anthony DiLeonardo, James Catellane, and Loius Warner's[1] denial of Plaintiffs' application to construct a larger, more modernized mosque for alleged religiously discriminatory reasons. (*See generally* ECF No. 1.)

The parties are before the Court on Plaintiffs' motion to compel the Town to search for and produce responsive discovery from the mobile devices of members of the Oyster Bay Planning Advisor Board ("PAB") that voted against MOLI's application to build a new mosque, in addition to seeking this same discovery from "any other Town employee Defendant designates as a document custodian that has not used a Town-issued mobile device for the entirety of their involvement in this matter." (ECF No. 55 at p. 1.) For the reasons stated herein, Plaintiffs' motion (ECF No. 55) is **DENIED without prejudice and with leave to renew**.

## BACKGROUND

Plaintiffs are a small Muslim congregation located in Bethpage, New York, and two of its leaders, who, in 2018, sought Defendant's permission to replace their mosque with a larger, more modern mosque capable of meeting the needs of the current congregation. (ECF No. 1 at ¶ 2.) After six years of delay, the Town denied Plaintiffs application on November 14, 2024, citing parking issues, traffic concerns, and "community character" as the grounds for denial. (*Id.* at ¶¶

---

[1] Defendant Stanco is the chair of the PAB and Defendants Byrne, Chabina, DiLeonardo, Castellane, and Warner are members of the PAB. (ECF No. 1 at pars. 27-28; *see* ECF No. 56-1, Serfaty Decl. at par. 9.) The claims against these parties were dismissed on May 22, 2025 pursuant to a stipulation of partial dismissal (*see* ECF No. 54), leaving Defendant Town of Oyster Bay as the sole remaining defendant.

14-15.) As Plaintiffs aver, these reasons were merely a pretext for the real reason for PAB's denial—anti-Muslim bias. (*See id.* at ¶ 16.)

On the same day this action was filed, Plaintiffs concurrently filed a motion for a preliminary injunction before the Honorable Sanket J. Bulsara requesting that this Court mandate that Defendants approve MOLI's application for construction of a new mosque and prohibit Defendants from applying Local Law No. 6—a parking ordinance requiring new houses of worship to have one parking spot for every three occupants. (*See* ECF No. 2; *see also* ECF No. 1 at ¶ 6.) On April 23, 2025, Judge Bulsara consolidated the hearing on the preliminary injunction with the full trial on the merits set for October 27, 2025. (Electronic Order dated April 23, 2025.) In light of the consolidated hearing and trial, Judge Bulsara referred the parties to the undersigned for, *inter alia*, modification of the then-existing discovery schedule. (*Id.*) The parties submitted a proposed consolidated briefing schedule on May 2, 2025 which the undersigned entered following a Status Conference with the parties on May 5, 2025. (ECF Nos. 50-51; *see* Electronic Order dated April 24, 2025.) The discovery schedule establishes, in relevant part, June 15, 2025 as the deadline for completion of all party document discovery, and August 1, 2025 as the deadline to complete all fact discovery, including depositions. (ECF No. 51 at pp. 1-2.)

During the course of discovery, Plaintiffs aver that during a meet and confer on May 12, 2025, the Town informed Plaintiffs that the PAB Members did not have Town-issued phones (*see* ECF No. 55 at pp. 3-4) which prompted Plaintiffs to ask the Town whether it would search their personal devices for responsive messages and communications. (*Id.* at p. 4.) Defendant did not consent which led Plaintiffs to reiterate this request multiple times, including in a May 13, 2025 email to counsel for Defendant, during a meet and confer on May 16, 2025, and in a subsequent email on May 20, 2025. (*See id.*) According to Plaintiffs, despite these requests,

3

Defendant refused to provide a timeline or additional details as to when, if at all, the collection of messages from Defendant's document custodians' personal devices would occur. (*See id.*; *see also* ECF No. 55-4 at p. 2.) As such, counsel for Plaintiffs notified Defendant on May 22, 2025 that:

> Defendants [have] thwart[ed] [Plaintiffs] request for core discovery by stalling indefinitely. Given that you still have not agreed to collect and produce your document custodians' text messages, we can only conclude that the parties are at an impasse. Accordingly, we will proceed with the motion to compel, which represents the only viable path forward at this time to resolving this issue in time for Defendants to make a timely production on or before June 15.

(ECF No. 55-4 at p. 2.)

Plaintiffs filed their motion to compel on May 23, 2025 (ECF No. 55) arguing they are entitled to the requested discovery because: (i) the fact that the PAB Members do not have phones issued by the Town makes it more likely that they had conversations about MOLI's application on their personal devices, and (ii) statements of religious discrimination and religious animus are not likely to be sent through "official mediums" like Town-owned email accounts, thus collecting electronically stored information ("ESI") from mobile devices is necessary. (ECF No. 55 at pp. 1-2.) As Plaintiffs contend, "[s]uch discovery is all the more important where, as here, the custodian does not have a work-issued phone and where the litigation involves allegations of discrimination." (*Id.* at p. 4.)

Defendant opposes (ECF No. 56), claiming that it has not delayed this action or stonewalled, but rather has needed additional time to conduct diligent searches of the eleven PAB members and custodians' personal devices Plaintiffs seek to "invade." (ECF No. 56 at pp. 1-2.) With that in mind, Defendant contends that "Plaintiffs' motion is premature" considering the discovery schedule is progressing on time, the parties have met and conferred regularly, and

4

Defendant actively keeps Plaintiffs aware of its continued search efforts.[2] (*See id.* at p. 2; *see also* ECF No. 55-4 at p. 3.) Additionally, Defendant maintains that "the absence of Town-issued cell phone does not justify blanket access to personal devices" especially where "there is *no evidence* to support Plaintiffs fishing expedition." (ECF No. 56 at p. 3) (emphasis in original).

Following Defendant's completion of "enough due diligence on these issues," it submits that:

> [W]e have now heard back from and extensively interviewed ten of the eleven persons whose cell phones Plaintiffs want to invade, and most of whom are not even Town employees. The final person is retired, and likewise not employed with the Town. If required, all ten agree to themselves conduct the search of their cell phones for the search terms previously provided by Plaintiffs under the direct supervision of the Town's undersigned counsel. Specifically, they each agree to conduct that search supervised by an attorney from our office alone, and to allow us to copy (by screenshot or other means) any responsive communications. As further shown therein, even this should not be required because there is no reasonable likelihood that any responsive communications not already being produced as a result of the production from the Town's server exist on their cell phones, and the privacy, disruption, and personal intrusions far outweigh any need to conduct such searches.

(ECF No. 56 at p. 3.)

## **DISCUSSION**

"Motions to compel are left to the court's sound discretion." *Bartlett v. DeJoy*, No. 22-CV-03398 (GRB)(JMW), 2023 WL 3306963, at *1 (E.D.N.Y. May 7, 2023) (citing *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.")). "Rule 26 of the Federal Rules of Civil Procedure, as amended in 2015, provides that a party is entitled

---

[2] In a May 22, 2025 email, the day before Plaintiffs filed the current motion, counsel for Defendant made Plaintiffs aware that they were "still in the process of gathering information in order to provide [Plaintiffs] with more detailed and specific information to potentially resolve, or at least narrow, any ESI and search-related disputes, before prematurely seeking judicial intervention." (ECF No. 55-4 at p. 2.)

to discovery on 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Under the amended rules, '[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" *Goss v. E.S.I. Cases & Accessories, Inc.*, No. 18-CV-2159 (GBD)(JLC), 2019 WL 3416856, at *2 (S.D.N.Y. July 30, 2019) (quoting *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016)).

Similarly, Fed. R. Civ. P. 34, the rule governing the production of ESI, provides "that a party may serve on any other party a request to produce documents and ESI within the party's possession, custody, or control so long as the documents and information are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2017 WL 5664852, at *7 (S.D.N.Y. Nov. 27, 2017) (citing Fed. R. Civ. P. 34(a)(1), 26(b)(1)). "'A party is deemed to 'control' documents that it has the legal right or the practical ability to obtain—even where those documents are in the physical possession of non-parties.'" *Waite v. UMG Recordings, Inc.*, 2020 WL 3959185, at *2 (S.D.N.Y. July 13, 2020) (quoting *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 190 (S.D.N.Y. 2013)). "The party seeking discovery has the burden of showing that the documents

6

are within the other party's control." *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72 (S.D.N.Y. 2020).

Once the party seeking discovery has made a sufficient showing of "control" necessary for producing responsive ESI from a personal device, that same party must provide "'some justification for [its] suspicion that relevant [messages] may be contained' on the employees' personal devices." *Smith v. Pergola 36 LLC*, No. 22-cv-4052, 2022 WL 17832506, at *4 (S.D.N.Y. Dec. 21, 2022) (quoting *Precision Med. Grp., LLC v. Blue Matter, LLC*, No. 20 Civ. 2974, 2020 WL 7352509, at *3 (S.D.N.Y. Dec. 15, 2020) (internal quotation marks omitted)). Here, Plaintiffs purported justification for their suspicion is that the PAB Members do not have Town-issued phones, "making it likely that they used their personal mobile devices to communicate regarding MOLI's application" and "explicit statements of religious animus are less likely to be shared through official mediums . . . than through informal channels, like text messages." (ECF No. 55 at pp. 1-2.) According to Plaintiffs, "[t]his dynamic—familiar to any cell phone user—makes it essential" that ESI from the mobile devices be produced. (*Id.* at p. 2.)

Plaintiffs offer not a modicum of proof or plausible explanation for the grounds behind this hypothetical justification. *See Thomas v. City of New York*, 336 F.R.D. 1, 2 (E.D.N.Y. 2020) (Bulsara, J.). Indeed, where courts *have directed* the production of ESI from personal devices, the parties in those cases have set forth specific, prior incidents or examples where the employee's personal accounts or mobile devices were used for work purposes, thus revealing a valid justification for their suspicion. *See, e.g., Galvan v. Rolling Lawns, Inc.*, No. 23-cv-6724, 2025 WL 618558, at *2 (S.D.N.Y. Feb. 26, 2025) (finding that plaintiff's suspicious was not "without justification" where "Defendants appear to have already produced text messages between the witnesses' personal phones and the named defendants about work-related matters.

7

Thus, there is reason to suspect that similar relevant communications may exist on these witnesses' devices between them and other pertinent parties"); *CA, Inc. v. AppDynamics, Inc.*, No. CV 13-2111 (WFK) (SIL), 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014) (requiring defendant to produce responsive emails contained in two employees personal email accounts where the employees testified that on numerous occasions their personal email accounts were used "in furtherance of [defendant's] business"); *Pergola*, 2022 WL 17832506, at *4 (determining that "some justification" for plaintiff's suspicion that relevant messages were on the employee's personal devices considering "Plaintiffs have represented that Defendant has already produced 'highly relevant communications between [defendant's] employees' . . . presumably from the employees' personal devices"). No such circumstances have been proffered here.

Absent a similar showing, as is the case here, Plaintiffs' request should be denied. *See Precision Med. Grp. LLC*, 2020 WL 7352509, at *3-4 (denying plaintiff's motion to compel for failure to justify a search of an employee's personal email accounts where the record was silent as to "any basis on which to conclude that [the employee] forwarded any [defendant] emails, or emails with the Individual Defendants on matters relating to this action, to his personal account"). Granting Plaintiffs' requested relief under these circumstances could undoubtedly lead to unfettered discovery over personal devices and fishing expeditions into employees' personal messages based on the "common practice" among phone users that potentially incriminating messages are best kept for personal devices. Without some indicia that these personal devices were in fact used for business purposes, the Court declines to direct their production.

Further, not only have Plaintiffs not identified *any* prior instances where Defendant's employees used their mobile devices for work purposes, but also the statements made within the

8

declaration of Judah Serfaty by ten of the eleven[3] custodians of information that Plaintiffs seek information from bolster this Court's decision. Specifically, each of the six PAB Members state that they do not possess one another's phone numbers, they "do not ever discuss over text messages, group chats, or any other electronic medium any applications," nor have they ever received a message concerning MOLI's application. (ECF No. 56-1, Serfaty Decl. at ¶¶ 7-8.) Moreover, they declare that their phones were never used for texting or other electronic communications concerning PAB business, there are no PAB group chats, and they do not know of other communications to their phones regarding MOLI's application. (*Id.* at ¶¶ 11-14.) The only PAB Member who received occasional text messages on his phone was Scott Byrne—the Town's Superintendent of Plaintiff—but declared that "[a]ny text messages on his phone concerning Town businesses are general in nature and non-substantive." (*Id.* at ¶ 15.) Similarly, the remaining four individuals—employees of the Town who were never named as defendants— affirm that they are unaware of any communication "from or to anyone to [their] phone[s] concerning MOLI, its application, or its congregants or concerning any other relevant responsive information." (*Id.* at ¶¶ 16-19.)

Additionally, each of those ten individuals responded "no" to the following questions:

Are you aware of any messages, jokes, memes, images, or commentary you've received or sent (via text, email, or chat) that:

- Refer to MOLI or its members in a negative, derogatory, or mocking way?

- Express opposition to the proposed mosque based on religion, ethnicity, or cultural assumptions (as opposed to zoning or planning concerns)?

- Contain language or tone that, if viewed by a third party, might appear discriminatory, hostile, or biased against MOLI or its members?

---

[3] The eleventh person is a non-party, former Planning Commissioner—identified as E.M.—who has not worked for the Town in several years and who Serfaty has not heard back from yet. (ECF No. 56-1, Serfaty Decl. at par. 4.)

9

Do you recall sending or receiving any text messages concerning:

- MOLI's site plan or proposed mosque?

- Parking at or near the mosque site?

- Local Law 6

- Any community reactions, complaints, or support for the project?

(*Id.* at ¶¶ 20-21.)

In short, Plaintiffs fail to identify how, in light of these statements and responses, they have carried their burden in proving a "justified suspicion" that relevant messages may be found within these individuals' personal devices. As such, Plaintiffs' request is denied. *See In re Turquoise Hill Resources Ltd. Securities Litigation*, No. 20-cv-8585, 2025 WL 27487, at *1 (S.D.N.Y. Jan. 3, 2025) (denying plaintiff's motion to compel production of text messages because they "[had] not provided reason to believe that all or almost all of the [] custodians have relevant and discoverable information in their possession") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel (ECF No. 55) is **DENIED without prejudice and with leave to renew** should any evidence later reveal that personal mobile devices were used. Further, counsel for Defendant is directed to obtain independent declarations from each of the ten individuals previously identified, setting forth whether, if at all, their personal devices were used for business purposes and, if so, detail what those messages or communications pertained to, and file those declarations on ECF on or before **June 13, 2025**.

Dated: Central Islip, New York
       June 4, 2025

S O   O R D E R E D:
/s/ *James M. Wicks*
       JAMES M. WICKS
       United States Magistrate Judge