UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Muslims on Long Island, Inc., Imran Makda, and Moeen Qureshi,

                      Plaintiffs,

    v.

The Town of Oyster Bay,

                      Defendant.

2:25-cv-00428-SJB-JMW

**CONSENT ORDER**

---

       This Consent Order is entered to resolve this lawsuit brought by Muslims on Long Island, Inc. ("MOLI"), Imran Makda and Moeen Qureshi (collectively, the "Plaintiffs") against the Town of Oyster Bay (the "Town"). Plaintiffs and the Town are referred to herein collectively as the "Parties." This Consent Order shall become binding upon the Parties upon the Effective Date, irrespective of whether the Court has so-ordered the Consent Order.

# RECITALS

**WHEREAS**, MOLI is currently operating a mosque out of its properties at 300 and 320 Central Avenue, Bethpage, New York 11714 (collectively, "the Mosque");

**WHEREAS**, in 2018, MOLI submitted an application (the "Application") and proposed plans to the Town for site plan approval of the proposed demolition of the Mosque, and for construction of a two-story with basement, 16,003 square-foot mosque with associated site plan improvements (the "Proposed Mosque") to replace the Mosque;

**WHEREAS**, prior to June 14, 2022, the Town's Schedule of Off-Street Parking and Loading Requirements, Town Code § 246-8.2.1, established a "Minimum Number of Parking Spaces Required" for places of worship utilizing a formula of "1 [parking space] per 3 seats or, if no seats, 1 [parking space] per 100 sq. ft. of floor space used for public assembly" (the "Prior Formula");

**WHEREAS**, on June 14, 2022, the Town Board enacted Local Law No. 6 of the year 2022 ("Local Law No. 6"), which, as relevant here, replaced the Prior Formula for calculating the "Minimum Number of Parking Spaces Required" for places of worship, with a new formula (the "New Formula") requiring a minimum of one parking space per three persons occupancy as determined by the Town's Public Assembly Inspector;

**WHEREAS**, on October 7, 2025, the Town Board amended its parking ordinance to make the New Formula applicable to other public assemblies, such as theaters, libraries, and museums;

**WHEREAS**, the Town's Planning Advisory Board ("PAB") held public meetings regarding the Proposed Mosque on July 18, 2024 and November 14, 2024;

WHEREAS, on July 18, 2024, the Nassau County Planning Commission recommended denial of the Application;

WHEREAS, on November 14, 2024, the PAB voted to deny the Application;

WHEREAS, the PAB issued a written denial of the Application on December 26, 2024 (corrected on February 13, 2025) (the "PAB Resolution");

WHEREAS, on January 24, 2025, Plaintiffs filed a Complaint against the Town in the United States District Court for the Eastern District of New York (the "Court") captioned, *Muslims on Long Island, Inc., et al. v. Town of Oyster Bay, et al.*, (2:25-cv-00428)-SJB-JMW (the "Action");

WHEREAS, in the Action, Plaintiffs asserted claims against the Town for relief under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"), the First and Fourteenth Amendments to the U.S. Constitution, the New York Constitution, and New York state law arising from the PAB Resolution;

WHEREAS, Plaintiffs amended their Complaint on September 12, 2025 to add additional factual allegations and claims against the Town under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Due Process Clause of the New York Constitution;

WHEREAS, the subject matter jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question jurisdiction) in that Plaintiffs' federal claims arise under 42 U.S.C. § 2000cc and 42 U.S.C. § 1983;

WHEREAS, this Court also has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a) because those claims arise from the same set of facts and circumstances as Plaintiffs' federal claims;

**WHEREAS**, the Parties agree that venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in the Town of Oyster Bay, which is located within the Eastern District of New York, and the Town is subject to personal jurisdiction in this District;

**WHEREAS**, the Town denies all liability for the claims asserted by Plaintiffs;

**WHEREAS**, the Parties engaged in mediation (the "Mediation") before Hon. William J. Condon ("Judge Condon") in August 2025 that resulted in a contingent settlement of this lawsuit that was subject to approval of a resolution by the Town's Board approving the settlement and the Application by August 29, 2025 (the "August 2025 Contingent Settlement");

**WHEREAS**, the Town Board did not approve the August 2025 Contingent Settlement or the Application by August 29, 2025;

**WHEREAS**, the Parties engaged in additional mediation before Judge Condon on September 26, 2025 and October 15, 2025, and engaged in further settlement discussions thereafter, including on October 21, 2025;

**WHEREAS**, on October 21, 2025, the Town Board approved a resolution authorizing the Town Attorney to enter into a consent order consistent with the terms of the resolution (the "Approval Resolution");

**WHEREAS**, the terms of this Consent Order are consistent with the terms of the Approval Resolution; and

**WHEREAS**, the Parties desire to resolve the Action without further litigation, controversy, and inconvenience related to the subject matter of the Action, and desire to settle, fully and finally, any and all claims among them;

**NOW, WHEREFORE**, in consideration of the foregoing premises and the releases, terms of settlement, and covenants contained in this Consent Order, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree to the terms of and entry of this Consent Order as follows:

## TERMS OF AGREEMENT

1. **Town Approval of the Application.** Immediately following the execution of this Consent Order, the Parties will work cooperatively and in good faith, and will exercise best efforts, to prepare a revised site plan and architectural drawings that reduces the square footage of the Proposed Mosque to no greater than 14,925 square feet in total including the basement, with no greater than 9,950 square feet above ground, and reduces the buffer from the adjacent property from 10 feet to 3 feet to allow additional off-street parking (the "Revised Mosque") as soon as practicable. MOLI will have discretion as to the design and structure of the Revised Mosque, so long as it is in keeping with the plans submitted to the Town (or substantially similar to those plans) and complies with the requirements of this paragraph and all applicable provisions of the New York State Building Code. The Parties will work with the architect already retained by the Town, at the Town's expense, to prepare the revised site plan and architectural drawings for the Revised Mosque; provided, however, that MOLI shall have the right to retain its own architect to adjust the site plan and architectural drawings for the Revised Mosque in its sole discretion consistent with the terms of this paragraph. Subject to compliance with this paragraph 1, the Revised Mosque shall be deemed approved by the Town, so long as the site plan and architectural drawings comply with the terms of this paragraph. The Town shall not require any additional approvals for the Revised Mosque, including, but not limited to, from

the PAB, the Department of Environmental Resources, or the Zoning Board of Appeals. Upon completion of the site plan and architectural drawings for the Revised Mosque, the Commissioner of Planning and Development, or his designee, shall immediately, but no later than five (5) calendar days, issue a certification that the site plan and architectural drawings of the Revised Mosque comply with this Consent Order (the "Certification").

2. **Timely Issuance of All Permits Needed to Construct and Occupy the Revised Mosque.** Within five (5) calendar days of the Certification, the Town shall commence with all due speed the processes necessary to issue to MOLI all permits, licenses, and/or other Town approvals that are legally required to construct, operate, and occupy the Revised Mosque, including but not limited to any construction or demolition permits that may be required. In the event that any necessary submissions of plans, drawings and/or other documents by MOLI shall require modifications, edits, additions, or corrections, MOLI shall work with the Town's assistance to promptly submit any renewed applications, which the Town shall then process on an expedited basis at the highest level of priority. The joint and mutually shared intention of this paragraph shall be for the Parties to collaborate to facilitate construction, operation, and occupation of the Revised Mosque as quickly as is reasonably possible, and consistent with all applicable State Fire and Building Code requirements. The Town's obligation hereunder to prioritize and expedite resolution of any issues concerning the construction, operation, or occupation of the Revised Mosque shall continue until all of the following events have occurred: (i) the construction of the Revised Mosque has been completed (or otherwise abandoned by MOLI) and (ii) the Town has issued to MOLI a Certificate of Occupancy (i.e., upon MOLI's completion of construction and demonstration that all Certificate of Occupancy requirements in accordance with the State Building Code and this paragraph 2 have been met), a Public

Assembly License, and any other legal approvals that may be necessary for the operation or occupation of the Revised Mosque. In order to facilitate the Town's issuance of any and all legally required approvals to MOLI, the Town shall appoint a representative of its choosing from the Town Department of Planning and Development to act as liaison (the "Liaison") with MOLI to facilitate any and all such approvals.

3. **Cooperation.** The Town shall cooperate with MOLI and shall not take any actions to impede in any way, whether directly or indirectly, MOLI's lawful efforts to obtain any remaining state, county, municipal, sewerage authority, or any other approvals of any kind associated with the construction of the Revised Mosque.

4. **The Basin.** The Parties shall also work cooperatively and in good faith to seek from Nassau County, the owner of the recharge basin property located adjacent to the Revised Mosque on the western side (the "Basin Property"), a use of the Basin Property to MOLI at the minimum cost acceptable to Nassau County, for potential use as a parking lot in connection with the Revised Mosque. If the cost exceeds a reasonable amount, MOLI shall not have any obligation to enter into an agreement with Nassau County.

5. **Pedestrian Light.** The Parties shall also work cooperatively and in good faith to seek that Nassau County install a blinking yellow pedestrian light that will turn red upon the pressing of a button, with a corresponding crosswalk, on Stewart Avenue adjacent to the Revised Mosque to allow congregants who park their cars in the Long Island Railroad parking lot (pursuant to a validly issued permit) the ability to safely cross the street. For avoidance of doubt, neither MOLI nor the Town shall bear the cost of installation of any such pedestrian light.

6. **Non-Retaliation.** The Town agrees not to retaliate in any manner whatsoever against Plaintiffs, MOLI's board members, or MOLI's congregants for the filing or maintenance of this lawsuit.

7. **Traffic Safety.** MOLI shall, at its own expense, hire a crossing guard to help congregants cross Central Avenue and Stewart Avenue in the vicinity of the Revised Mosque during and surrounding its peak prayer times on Friday afternoons and during Ramadan ("Peak Prayer Time") for the first eighteen (18) months following the issuance of a Certificate of Occupancy. After the first eighteen (18) months following the issuance of Certificate of Occupancy, the Parties shall use reasonable efforts to jointly request to Nassau County to obtain a crossing guard or guards during Peak Prayer Time, at no cost to the Parties.

8. **Occupancy Cap.** The Parties agree that the Revised Mosque shall have an occupancy cap of 295 persons.

9. **Parking.** MOLI shall undertake reasonable efforts to inform and encourage congregants to utilize lawful off-street parking, including at the Long Island Railroad parking lot with a validly issued permit in the vicinity of the Revised Mosque, when attending services at the Revised Mosque during and surrounding the Peak Prayer Time.

10. **Non-Simultaneous Use.** Upon construction of the Revised Mosque, the Mosque's second floor and basement shall not be occupied during the Peak Prayer Time and MOLI shall affix interior signage (such as a poster) prohibiting congregants from using the Revised Mosque's second floor and basement during the Peak Prayer Time; provided, however, that nothing herein shall limit or otherwise restrict MOLI's congregants from performing ritual ablution ("Wudu") using Wudu stations or from using the bathroom areas located on the Revised Mosque's second floor or in its basement at any time.

11. **Negotiation of Settlement Payment.** During the five-day period following the Town's receipt of a final accounting, together with documentation, of Plaintiffs' Accrued Costs (as defined below) (the "Negotiation Period"), the Parties shall negotiate in good faith in an attempt to reach agreement concerning the total amount the Town shall pay or cause to be paid to Plaintiffs, inclusive of attorneys' fees, out-of-pocket costs, and disbursements (the "Settlement Payment"). In the event that the Parties are unable to reach agreement concerning the amount of the Settlement Payment by the end of the Negotiation Period, the Parties agree to submit to binding arbitration (the "Arbitration") for the sole purpose of determining the amount of the Settlement Payment in accordance with the terms of Paragraph 12.

12. **Arbitration of Settlement Payment.** In the event the Parties are unable to reach agreement concerning the amount of the Settlement Payment by the end of the Negotiation Period under the terms of Paragraph 11 such that the Parties proceed to Arbitration, that Arbitration shall be governed by the terms of this Paragraph 12. In any Arbitration, the Honorable William J. Condon shall serve as the sole arbitrator (the "Arbitrator") with full and final authority to determine the Settlement Payment, subject to the terms of this paragraph. The Settlement Payment shall consist solely and exclusively of reasonable attorneys' fees, out-of-pocket costs, and disbursements (collectively, "Accrued Costs") incurred through the Effective Date. Within three (3) business days after the end of the Negotiation Period, Plaintiffs shall submit to the Arbitrator and the Town's counsel a final accounting of their Accrued Costs, together with any briefing or documentation concerning the reasonableness of the Accrued Costs. The Town shall have eight (8) business days thereafter to submit any response thereto, and the Plaintiffs will have two (2) business days thereafter to submit a reply thereto. The Parties may request that the Arbitrator hold an oral argument as to the reasonableness of the

Accrued Costs, shall not request an evidentiary hearing, and no evidentiary hearing shall be held unless the Arbitrator in his sole discretion so requires. The Arbitrator shall issue a written decision and award with a determination of the Settlement Payment no later than November 21, 2025 (or such other date that the Parties and Arbitrator may agree upon), which shall be final and binding and enforceable as an arbitration award as part of the Court's reserved jurisdiction.

13. **Enforcement of Settlement Payment.** The Town shall pay or cause to be paid the full amount of the Settlement Payment as mutually agreed upon by the parties or determined by the Arbitrator, as applicable, and shall take all necessary actions and obtain any and all required authorizations, appropriations, or approvals from any board, agency, or governing body to make the Settlement Payment in full, so that the full amount of the Settlement Payment shall be made within forty-five (45) days of the mutual agreement or the Arbitrator's decision, as applicable. If the Town is unable to make the Settlement Payment within forty-five (45) days of the mutual agreement or Arbitrator's decision and award concerning the Settlement Payment in accordance with Plaintiffs' counsel's payment instructions (subject to notice and cure set forth in Paragraph 24),[1] then the Town shall remain liable for the full amount of the Settlement Payment, plus costs of collection, including reasonable attorneys' fees, together with default interest at the rate of nine (9%) per annum. JURY WAIVER: THE PARTIES CONSENT TO WAIVE THEIR RIGHT TO A JURY IN ANY ACTON TO ENFORCE THIS PROVISION.

14. **Press Release and Public Communications**. On the Effective Date, the Parties shall issue a joint press release in the form attached hereto as Exhibit A. Counsel for the Parties

---

[1] Within one (1) business day of the Arbitrator's decision, Plaintiffs' counsel shall provide the Town in writing with payment instructions, including wire transfer information and/or check delivery details, together with a written allocation identifying the portions of the Settlement Payment to be distributed among Plaintiffs and their counsel (the "Payment Instructions"). The Town shall make payment strictly in accordance with the Payment Instructions, and such payment shall fully satisfy its obligation under this Paragraph 13.

shall not disparage any of the Parties, and the Parties shall instruct their employees and their boards not to disparage the Parties.

15. **Mutual Release of Claims**. The Mutual Releases (defined in this Paragraph) shall be effective upon occurrence of all of the following events: (i) the issuance of the Certification, (ii) timely issuance of all permits from the Town needed to construct and occupy the Revised Mosque in accordance with Paragraph 2 above; and (iii) payment of the Settlement Payment in accordance with Paragraph 13 above.

> *Mutual Releases:* Plaintiffs and the Town hereby release, acquit and forever discharge each other, their trustees, officers, officials, volunteers, agents, members, employees, vendors, assigns, successors in interest, attorneys, insurers, and indemnitors, and further release each individual Party and their successors, heirs, assigns, agents, personal representatives, executors, trustees, insurers, and attorneys from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, demands, and obligations in law or equity, whether known or unknown, which they ever had, now have, or hereafter can, shall, or may have from the beginning of time through the Effective Date of the Consent Order, related to or arising from the claims and allegations set forth in the case captioned *Muslims on Long Island, Inc., et al. v. Town of Oyster Bay,* (2:25-cv-00428)-SJB-JMW; provided, however, that nothing in this Mutual Release shall prevent or limit in any way the Parties from seeking any remedies that may be necessary to enforce the Consent Order or from pursuing remedies for its breach.

16. **No Admission of Fault or Liability.** The Parties expressly understand and agree that this Consent Order is a good faith compromise and settlement of disputed claims, and that neither Party is hereby admitting any wrongdoing or liability.

17. **Legal Challenges to this Consent Order or to Approval of the Application, or to Issuance of any Applicable Permits, Licenses, and/or Other Approvals Legally Required.** The Court shall retain jurisdiction of any disputes between the Parties regarding the terms of this Consent Order.  In the event the Parties fail to resolve any of the foregoing matters after attempting to do so without judicial intervention, including via mandatory mediation before Judge Condon or another mediator jointly and reasonably selected by the Parties, either party may make a motion to the Court to request a hearing at which the Parties may present testimony and evidence concerning the unresolved matter.  The Court shall also retain jurisdiction to enforce this Consent Order and to resolve any disputes between a party or parties and a third-party that would nullify any portion of this Consent Order, including any proceeding brought by any party or third party that would nullify or have the effect of nullifying any portion of the Consent Order.  In the event of any direct or collateral legal challenges to the Consent Order or the Approval Resolution, the Town shall oppose any such legal challenges.  The Town shall not oppose any MOLI application to intervene in any such direct or collateral legal challenge or appeal, or any other litigation arising from this Consent Order.  Each party shall bear its own fees and costs associated with any direct or collateral legal challenge or appeal, or any other litigation arising from this Consent Order or the Town's approval of the Revised Mosque or of related permits, licenses, and/or other approvals legally required.  Notwithstanding the foregoing, nothing in this paragraph limits Plaintiffs' rights to fees, costs, liquidated damages, or other remedies under this Consent Order or for any breach of this Consent Order.

18. **Enforcement By Judicial Order, Jurisdiction Retained, and Removal.** Ten (10) business days after the Effective Date, the Parties shall jointly file this Consent Order with the Court and request that the Court so-order this Consent Order. In the same filing, the Parties shall further request that the Court retain jurisdiction over this matter until a Certificate of Occupancy, a Public Assembly License, and any other legally required approvals for the Revised Mosque are issued. For the avoidance of doubt, the Court's retention of jurisdiction over this matter encompasses all matters relating to the Consent Order. Accordingly, any related complaint or pleading filed in any New York state court shall be promptly removed, if possible, to the United States District Court for the Eastern District of New York and marked as a related matter to this Action. All Parties consent to such removal and all further proceedings on any such pleadings shall be in this Court before the District Judge assigned to this Action. Once MOLI receives a Certificate of Occupancy, a Public Assembly License, and any other legally required approvals for the Revised Mosque, the Parties shall jointly seek dismissal of this Action in accordance with Paragraph 20 of this Consent Order.

19. **Effective Date.** The Effective Date of this Consent Order shall be the day of the execution of this Consent Order by the Parties.

20. **Dismissal of Action.** Within five (5) business days of the Town's issuance of a Certificate of Occupancy, a Public Assembly License, and any other legally required approvals from the Town to MOLI concerning the Revised Mosque (the "Stipulation of Dismissal Precursor Events"), Plaintiffs shall file a Joint Stipulation of Dismissal, dismissing with prejudice all of the claims in the Action. However, any disputes then pending for resolution before the Court (to the extent not mooted per written agreement of the parties in view of the issuance of the Certificate of Occupancy and Public Assembly License as well as any additional

legally required approvals) shall be resolved prior to any dismissal. If the Stipulation of Dismissal Precursor Events do not occur, the Stipulation of Dismissal will be void and of no effect.

21. **Authority to Enter Consent Order.** Each Party to this Consent Order represents and warrants that it, he, or she is duly authorized to enter into this Consent Order and the signatory below executing this Consent Order on each such Party's behalf, has the authority to sign on behalf of such person or entity.

22. **Consent Order Jointly Prepared.** This Consent Order, including any uncertainty or ambiguity herein, shall not be construed against any one Party, but shall be construed as if all the Parties jointly prepared this Consent Order.

23. **Entire Agreement and Modifications.** This Consent Order contains the entirety of the Parties' agreement concerning the subject matter addressed herein. Any modifications of this Consent Order must be in a writing signed by all parties and will be effective upon the written consent of all the Parties or counsel acting on their behalf. The Parties shall not orally modify any requirement of the Consent Order, including the requirement that all modifications to the Consent Order be in writing.

24. **No Waiver and Cure Period**. No waiver of any provision herein shall be binding unless in writing and signed by the person or entity against whom the waiver is asserted. No waiver of any breach of any term or provision of this Consent Order shall be construed to be, nor shall it be, a waiver of any other breach of this Consent Order. Any Party's failure to comply with any time limit set forth in this Consent Order shall constitute a breach of this Consent Order only after the non-complying party fails to cure such non-compliance within ten (10) calendar

days of the relevant deadline or such other additional cure period as the Parties jointly and reasonably agree to.

25. **Notice and Submissions.** Any notice required under or regarding this Consent Order shall be sent via overnight delivery or courier service, as well as email, to the following persons and addresses, which may be amended and updated by either Party upon reasonable prior notice to the other Party. Notice to Plaintiffs shall be sent to Imran Makda via email at imakda@yahoo.com and the following physical address:

> Muslims on Long Island, Inc.
> c/o Imran Makda
> 320 Central Avenue
> Bethpage, New York 11714

with a copy to Muhammad Faridi via email at muhammad.faridi@linklaters.com and the following physical address:

> Linklaters LLP
> Attn: Muhammad Faridi
> 1290 Avenue of the Americas,
> New York, NY 10104

Notices to the Town shall be sent to the following physical and email addresses:

> Frank M. Scalera, Town Attorney
> Town of Oyster Bay
> 54 Audrey Avenue
> Oyster Bay, NY 11771
> fscalera@oysterbay-ny.gov

> - and –

> Edward M. Ross, Esq.
> Rosenberg Calica Birney Liebman & Ross LLP
> 400 Garden City Plaza, Suite 403
> Garden City, NY 11530
> eross@rosenbergllp.com

> - and –

> Michael Cardello III
> MORITT HOCK & HAMROFF LLP
> 400 Garden City Plaza
> Garden City, New York 11530
> mcardello@moritthock.com

26. **Execution in Counterparts.** This Consent Order may be executed in one or more counterparts. The signature pages of the various counterparts may be collected with one copy of the balance of this Consent Order, which, together with collected and signed signature pages, shall constitute a true and correct copy of this Consent Order. Photocopies or electronic scans of this Consent Order (including signature pages) may be used in place of originals for any and all purposes.

[remainder of page left intentionally blank – continued on following page]

Central Islip, New York
Dated: October 22, 2025

| Plaintiffs | Defendant |
|---|---|
| *[signature]* | |
| Muslims on Long Island, Inc. | Town of Oyster Bay |
| By: IMRAN MAKDA | By: Frank Scalera, Town Attorney |
| Date: October 22, 2025 | Date: |
| | |
| *[signature]* | |
| Imran Makda | |
| Date: October 22, 2025 | |
| | |
| _____ | |
| Moeen Qureshi | |
| Date: | |

SO ORDERED:

_____
Honorable Sanket J. Bulsara
United States District Judge

Defendant

---

Town of Oyster Bay
By: Frank Scalera, Town Attorney
Date:
Central Islip, New York
Dated: October 22, 2025


Plaintiffs

---

Muslims on Long Island, Inc.
By: _____
Date:


Imran Makda
Date:

_____
Moeen Qureshi
Date: 10/22/25



SO ORDERED:

_____
Honorable Sanket J. Bulsara
United States District Judge

Central Islip, New York
Dated: October 22, 2025

Plaintiffs

_____
Muslims on Long Island, Inc.
By: _____
Date:

_____
Imran Makda
Date:

_____
Moeen Qureshi
Date:

Defendant

_[signature]_____
Town of Oyster Bay
By: Frank Scalera, Town Attorney
Date: October 22, 2025

SO ORDERED.

*/s/ Sanket J. Bulsara*    November 6, 2025
_____
SANKET J. BULSARA
United States District Judge

DATE:  November 6, 2025
       Central Islip, New York

**Exhibit A**

FOR IMMEDIATE RELEASE

**Town of Oyster Bay and Muslims on Long Island, Inc. Announce Litigation Settlement Surrounding Reconstruction of Mosque in Bethpage**

Bethpage, NY - The Town of Oyster Bay and Muslims on Long Island, Inc. ("MOLI") today announced a settlement resolving litigation concerning MOLI's application to construct a new house of worship in Bethpage at the site of an existing mosque.

The new approved facility will be no greater than 9,950 square feet above ground, with a reduction in maximum occupancy from 464 to 295. Importantly, several key measures have also been agreed upon including enhanced crosswalks, the installation of a caution light to slow traffic, and the provision of crossing guards funded by the applicant.

Significant additional on-site parking will also be created.

These steps reflect a reasonable compromise that prioritizes safety, quality of life, and mutual respect among all who live and worship in the Bethpage community.

MOLI leaders emphasized that the organization remains committed to being an open and welcoming part of the Bethpage community.

Moeen Qureshi, a named plaintiff said: "We are grateful to put this chapter behind us and to move forward in partnership with our neighbors. Our new mosque will be a place where everyone—regardless of faith—will be welcome. We look forward to hosting the Town's leadership, our neighbors, and our friends from across Long Island at our new house of worship."

Imran Makda, a named plaintiff, said: "This is a day of new beginnings. Our doors will always be open to the community, and we hope our mosque will be a place where people come together in friendship and mutual respect."

Town officials expressed satisfaction that the matter has been resolved and optimism about the future relationship between MOLI and the Town.

Joseph Saladino, Town Supervisor, said: "This agreement resolves planning concerns and allows us to move forward as one community – with a smaller facility, less occupancy, improved traffic safety, added on-site parking, and a shared commitment to safety, quality of life, and mutual respect in Bethpage."

Both parties expressed a commitment to ongoing cooperation to preserve the Town of Oyster Bay's quality of life and to fostering an inclusive community across Long Island.

###